UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| VICTORIA L. BENSON, | ) | CASE NO. 3:19-cv-02804 |
| | ) | |
| Plaintiff, | ) | JUDGE JAMES R. KNEPP II |
| | ) | |
| v. | ) | MAGISTRATE JUDGE DAVID A. RUIZ |
| | ) | |
| ANDREW SAUL, | ) | |
| *Comm'r of Soc. Sec.*, | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Defendant. | ) | |

Plaintiff, Victoria L. Benson (Plaintiff), challenges the final decision of Defendant Andrew Saul, Commissioner of Social Security (Commissioner), denying her application for Supplemental Security Income (SSI) under Title XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq.* ("Act"). This court has jurisdiction pursuant to 42 U.S.C. § 405(g). This case is before the undersigned United States Magistrate Judge pursuant to an automatic referral under Local Rule 72.2(b) for a Report and Recommendation. For the reasons set forth below, the Magistrate Judge recommends that the Commissioner's final decision be AFFIRMED.

I.      **Procedural History**

On October 11, 2016, Plaintiff filed her application for SSI, alleging a disability onset date of September 8, 2015. (R. 9, Transcript ("Tr.") 183). The application was denied initially and upon reconsideration, and Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 106-125). Plaintiff participated in the hearing on June 12, 2018, was represented by counsel, and testified. (Tr. 42-72). A vocational expert ("VE") also participated and testified. *Id.* On August 15, 2018, the ALJ found Plaintiff not disabled. (Tr. 28). On October 2, 2019, the Appeals Council denied Plaintiff's request to review the ALJ's decision, and the ALJ's decision became the Commissioner's final decision. (Tr. 1-4). Plaintiff's complaint challenges the Commissioner's final decision, and the parties have completed briefing in this case. (R. 1, 10, 12).

Plaintiff asserts the following assignments of error: (1) The ALJ failed to properly evaluate the opinions of the consultative examiner, and (2) The ALJ failed to properly evaluate the opinions of the functional capacity evaluation administered by two "other sources." (R. 10, PageID# 1583).

II.     **Evidence**

    A.      **Relevant Medical Evidence**[1]

        1.      **Medical Opinions Concerning Plaintiff's Functional Limitations**

On December 19, 2016, Plaintiff underwent a consultative psychological evaluation performed by Jena Wierwille, Psy. D., at the request of the Ohio Division of Disability Determination. (Tr. 469-476). Plaintiff's chief complaint was headaches that resulted in dizziness, pain, and nausea. (Tr. 470). On mental examination, Plaintiff's appearance and

---

[1] The recitation of the evidence is not intended to be exhaustive and is confined to those portions of the record directly germane to the assignments of error raised.

behavior was described as appropriate, polite, and cooperative with no bizarre behavior. (Tr. 472). Her thought processes and speech were described as well-organized and logical. *Id*. Plaintiff described her mood as "down," and she was tearful when discussing her pituitary gland tumor. *Id*. She did not endorse suicidal or homicidal thoughts and exhibited no signs of anger or irritability. (Tr. 472-473). Her sensorium and cognitive functioning were unremarkable, except for an incorrect multiplication of 10x12; and Dr. Wierwille opined Plaintiff had intellectual functioning in the average range. *Id*. Dr. Wierwille did not identify any problems with insight or judgment, and diagnosed Ms. Benson with an adjustment disorder with a depressed mood. (Tr. 473). Dr. Wierwille did not expect any significant deterioration in mental functioning. *Id*.

Dr. Wierwille's functional assessment stated as follows: Plaintiff "is expected to be able to understand and apply instructions in the work setting consistent with average intellectual functioning but may be easily distracted by preoccupations of making a mistake in front of others; this preoccupation may contribute to some limitation in the areas of understanding, remembering, and carrying out instructions;" Plaintiff's "preoccupation with her condition and resulting effectiveness in the community may contribute to limitations in the areas of maintaining attention and concentration to complete both simple and multi-step tasks," which may cause her to "become tearful if overwhelmed;" "[a]lthough [Plaintiff] may have an ability to conform to social expectations in a work setting, she will likely become easily overwhelmed and may not respond to interpersonal stress in a controlled manner;" and Plaintiff "has limited coping strategies at her disposal and prefers to avoid external pressures. Her current depressed mood will likely contribute to … shutting down and avoiding situations of stress in a work setting; it is expected that if she is unable to avoid the source of stress, she will deteriorate and become tearful." (Tr. 474-475).

3

### 2. Other Source Opinions Concerning Plaintiff's Functional Limitations

On May 23, 2017, Plaintiff underwent a functional capacity evaluation (FCE) performed by occupational therapist Krista Hoersten and physical therapist Eric Schaffner. (Tr. 1378-1386). Their overall impression was that Plaintiff was cooperative with testing and demonstrated full and consistent effort. (Tr. 1378). The FCE reported Plaintiff's abilities based on an 8-hour workday. (Tr. 1379). They "recommended that [Plaintiff] start with return to work with shorted [sic] days, limited to 4 hour shifts gradually progressing as able." *Id*. They found no identified limits in Plaintiff's ability to stand, climb stairs/ladders, and balance. (Tr. 1380-1381). They indicated Plaintiff could frequently walk and perform fine motor coordination, as well as occasionally squat. (Tr. 1381). They opined that Plaintiff had a "reduced tolerance to the overall workday," based on Plaintiff's "[s]ignificant and progressive reports of pain" and poor tolerance to the duration of the FCE. (Tr. 1382). At the same time, they opined Plaintiff's "physical work abilities meet job demands," but that she would benefit from task specific education for body mechanics. *Id*. (Tr. 1382). They assessed Plaintiff's work-level ability as light to medium. (Tr. 1378).

### III. Disability Standard

A claimant is entitled to receive benefits under the Social Security Act when she establishes disability within the meaning of the Act. 20 C.F.R. § 404.1505 & 416.905; *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524 (6th Cir. 1981). A claimant is considered disabled when she cannot perform "substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a) and 416.905(a);

404.1509 and 416.909(a).

The Commissioner determines whether a claimant is disabled by way of a five-stage process. 20 C.F.R. § 404.1520(a)(4); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). First, the claimant must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. 20 C.F.R. §§ 404.1520(b) and 416.920(b). Second, the claimant must show that she suffers from a medically determinable "severe impairment" or combination of impairments in order to warrant a finding of disability. 20 C.F.R. §§ 404.1520(c) and 416.920(c). A "severe impairment" is one that "significantly limits ... physical or mental ability to do basic work activities." *Abbott*, 905 F.2d at 923. Third, if the claimant is not performing substantial gainful activity, has a severe impairment (or combination of impairments) that is expected to last for at least twelve months, and the impairment(s) meets a listed impairment, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d). Fourth, if the claimant's impairment(s) does not prevent her from doing past relevant work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(e)-(f) and 416.920(e)-(f). For the fifth and final step, even if the claimant's impairment(s) does prevent her from doing past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g) and 416.920(g), 404.1560(c).

**IV.     Summary of the ALJ's Decision**

1. The claimant has not engaged in substantial gainful activity since October 7, 2016, the application date (20 CFR 416.971 *et seq.*).

2. The claimant has the following severe impairments: migraines/chronic headaches; an affective disorder; Eustachian tube dysfunction with mixed bilateral hearing loss; and hypothyroidism; (20 CFR 416.920(c)).

3. The claimant does not have an impairment or combination of impairments

that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 416.967(c) except: postural limitation of no climbing of ladders, ropes, or scaffolds. Frequent climbing of ramps and stairs. Frequent balancing, stooping, kneeling, crouching and crawling. Frequent use of the bilateral lower extremities for operation of foot controls. Environmental limitation to avoid all exposure to hazards, such as dangerous moving machinery and unprotected heights. Additional environmental limitation to avoid concentrated exposure to irritants such as fumes, odors, dust, and gases. No jobs in loud work environments, such as heavy traffic noise levels. Work limited to simple, routine, and repetitive tasks in a work environment free from fast paced production requirements, such as moving assembly lines and conveyor belts, involving only work related decisions, with few if any work place changes. Occasional interaction with the general public, coworkers, and supervisors.

5. The claimant is unable to perform any past relevant work (20 CFR 416.965).

6. The claimant was born on ***, 1979 and was 37 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).

7. The claimant has at least a high school education and is able to communicate in English (20 CFR 416.964).

8. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969a).

10. The claimant has not been under a disability, as defined in the Social Security Act, since October 7, 2016, the date the application was filed (20 CFR 416.920(g)).

(Tr. 16, 18, 20, 26-28).

## V.    Law and Analysis

### A.    Standard of Review

Judicial review of the Commissioner's decision is limited to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010). Review must be based on the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may look into any evidence in the record to determine if the ALJ's decision is supported by substantial evidence, regardless of whether it has actually been cited by the ALJ. *Id*. However, the court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

The Commissioner's conclusions must be affirmed absent a determination that the ALJ failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Brainard*, 889 F.2d at 681. A decision supported by substantial evidence will not be overturned even though substantial evidence supports the opposite conclusion. *Ealy*, 594 F.3d at 512.

### B.    Plaintiff's Assignments of Error

#### 1. Weight Assigned to Opinion of Consultative Psychologist

In the first assignment of error, Plaintiff asserts the ALJ improperly discredited the opinion

Dr. Wierwille, a psychological consultative examiner, by simply discarding her findings rather than attempting to interpret her opinions. (R. 10, PageID# 1588). Plaintiff further contends the ALJ had a duty to follow up with Dr. Wierwille regarding her opinions if the ALJ found them to be speculative and nonspecific.

"Generally, [the Social Security Administration] give[s] more weight to the opinion of a source who has examined [claimant] than to the opinion of a source who has not examined [claimant]." *See* 20 C.F.R. §§ 404.1527(c)(1). In addition, Social Security Ruling (SSR) 96-8p, 1996 WL 374184 (July 2, 1996), cautions that an ALJ "must always consider and address medical source opinions [and] [i]f the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." *See also Puckett v. Colvin*, 2014 WL 1584166 at * 9 (N.D. Ohio, April 21, 2014) (Vecchiarelli, M.J.) The *Puckett* court aptly noted that although the ALJ was not required to evaluate opinions of consultative examiners with the same standard of deference as would apply to an opinion of a treating source, the ALJ was required to "acknowledge that [the examiners'] opinions contradicted his RFC finding and explain why he did not include their limitations in his determination of Plaintiff's RFC[.]" *Id.* The requirement that an ALJ *explain* the weight afforded to a non-treating source's opinion should not be construed as rigorously as the treating physician rule, however. *See, e.g., Jefferson v. Colvin*, No. 1:14cv01851, 2015 WL 4459928 at *6 (N.D. Ohio 2015) (White, M.J.) (citations omitted); *Chandler v. Comm'r of Soc. Sec.*, No. 2:13cv324, 2014 WL 2988433 (S.D. Ohio, July 1, 2014) ("the ALJ is not required to give 'good reasons' for rejecting a nontreating source's opinions in the same way as must be done for a treating source").

The ALJ addressed Dr. Wierwille's consultative opinions as follows:

> In addition to severe physical impairments, the record supports the claimant was

8

> also assessed with a severe mental impairment, of an affective disorder. (10F). Specifically, the record supports the claimant participated in a consultative psychological exam on December 19, 2016, performed by Jena Wierwille, Psy.D. (10F). Dr. Wierwille interviewed, examined and assessed the claimant. (*Id.*). Specifically, Dr. Wierwille observed the claimant drove herself to the assessment, dressed appropriately, had well organized and logical thought processes, and smiled politely at the start and end of the assessment. (*Id.*). Dr. Wierwille noted the claimant described her mood as "down", but she indicated that her affect visibly brightened when discussing what it feels like when she is not in pain. (*Id.*). Dr. Wierwille further observed the claimant had no overt indications of delusional beliefs or behavioral manifestations of hallucinations and found that the claimant's intellectual functioning appeared to be in the average range. (*Id.*). Based on her interview and exam, Dr. Wierwille assessed the claimant with an adjustment disorder with depressed mood. (*Id.*).
>
> Dr. Wierwille further opined that the claimant is expected to be able to understand and apply instructions in the work setting consistent with average intellectual functioning but may be easily distracted by preoccupations of making a mistake in front of others and she noted that this preoccupation may contribute to some limitation in the areas of understanding, remembering, and carrying out instructions. (*Id.*). Dr. Wierwille also opined that the claimant's preoccupation with her (physical) condition and resulting effectiveness in the community may contribute to limitations in the areas of maintaining attention and concentration to complete both simple and multi-step tasks. (*Id.*). Additionally, due to insufficient coping mechanisms, Dr. Wierwille noted that the claimant will become tearful if overwhelmed which may prompt performance concerns by others and she may not respond to interpersonal stressors in a controlled manner. (*Id.*). Thus, Dr. Wierwille noted that if [sic] the claimant should avoid stress in a work setting and may deteriorate if the source of the stress is unavoidable. (*Id.*).
>
> Dr. Wierwille's assessment and findings generally reflect that the claimant has some limitation with concentration, attention, interacting with others, and managing work related stress due to her impairment. This assessment is supported by Dr. Wierwille's objective exam findings of record, such as the notation of the claimant's mood on exam. However, this assessment is not fully consistent with the remaining objective medical evidence of record, which reflects the claimant has had no formal mental health treatment of any kind nor does she have mental health referrals for her alleged symptoms. Further, Dr. Wierwille's assessments are general in nature and do not contain specific functional limitations and are also somewhat speculative, using terms such as "may" in the general statements discussed above. For these reasons, only partial weight is accorded to Dr. Wierwille's assessment.

(Tr. 24-25).

The ALJ is correct in noting that Dr. Wierwille's opinion frequently employs qualifying language such as "may" or "likely," which merely suggest that some limitations are possible. Simply put, the court finds no reversible error stemming from an ALJ's decision not to credit such equivocal limitations. Given the repeated and undoubtedly intentional use of such qualified language, Dr. Wierwille was obviously reluctant to assess limitations without making it abundantly clear that she lacked the certainty that such limitations were absolutely necessary. However, Plaintiff would have this court require the ALJ to construe Dr. Wierwille's qualified limitations as an affirmative finding that such limitations are mandated. The court declines to do so, as this would improperly alter the contents of the medical source's opinion. *See, e.g., Slivka v. Berryhill*, No. 1:17-cv-01076, 2018 U.S. Dist. LEXIS 112681, at *22 (N.D. Ohio May 29, 2018); *Honaker v. Colvin*, No. 1:14-CV-2487, 2015 U.S. Dist. LEXIS 125835, 2015 WL 5559888 at *8 (N.D. Ohio Sept. 21, 2015) (White, M.J.) (finding no error where the ALJ did not adopt an equivocal and "non-committal" medical opinion that certain symptoms "could result in attendance or decision-making issues.").

Plaintiff construes the ALJ's analysis as tantamount to a finding that Dr. Wierwille's opinion was "incomplete or inadequate." (R. 10, PageID# 1591-1592). Under such circumstances, Plaintiff argues, the regulations require the ALJ to recontact the source. *Id*., citing 20 C.F.R. § 404.1519p(b) ("If the report is inadequate or incomplete, we will contact the medical source who performed the consultative examination, give an explanation of our evidentiary needs, and ask that the medical source furnish the missing information or prepare a revised report."). The Commissioner counters that the ALJ's finding—that the limitations assessed by Dr. Wierwille were speculative and non-specific—was not tantamount to a determination that the opinion was incomplete or inadequate. (R. 12, PageID# 1609-1610). Plaintiff cites no authority

10

to support her argument that the presence of vague, speculative, or non-specific functional limitations in a consultative examiner's report is the equivalent of a finding that a report is incomplete or inadequate. (R. 10, PageID# 1591-1592).

Conversely, there is authority to support the opposite proposition. A nearly identical argument to the one now advocated by Plaintiff was rejected recently by another district court within the Sixth Circuit. The court noted:

> Plaintiff now argues that the ALJ committed reversible error by discounting Dr. Weaver's opinion instead of contacting Dr. Weaver for more information or a revised report. … The undersigned disagrees. In Plaintiff's view, the ALJ's description of Dr. Weaver's opinion as vague and not in vocationally-relevant terms constitutes an 'admission' that it was inadequate or incomplete…. As a result, he argues, the ALJ was required to ask Dr. Weaver to furnish additional information or prepare a revised report…. However, the Sixth Circuit and several of its constituent District Courts have held that a consultative examiner's report is not rendered "inadequate or incomplete" due to either the absence of a medical opinion or the inclusion of a "vague" one. *See Dooley* [*v. Comm'r of Soc. Sec.*, 656 Fed. App'x 113, 122 (6th Cir. 2016)] (finding that ALJ was not required to contact consultative examiner whose opinion was found to be vague and unsupported by the evidence); 20 C.F.R. §§ 404.1519n(c)(6), 416.919n(c)(6). *See also Shoults v. Comm'r of Soc. Sec.*, No. 2:19-cv-1425, 2020 U.S. Dist. LEXIS 44955, 2020 WL 1242396, at *8-9 (S.D. Ohio Mar. 16, 2020) (finding that ALJ was not required to contact consultative examiner whose opinion was found to be vague); *Ingram v. Berryhill*, No. 1:17-cv-2163, 2018 U.S. Dist. LEXIS 220587, 2018 WL 5634345, at *12 (N.D. Ohio Aug. 17, 2018) (same) *report and recommendation adopted*, No. 1:17-cv-2163, 2019 U.S. Dist. LEXIS 16681, 2019 WL 416331 (N.D. Ohio Feb. 1, 2019); *Hamilton v. Comm'r of Soc. Sec.*, No. 1:15-cv-945, 2016 U.S. Dist. LEXIS 124425, 2016 WL 4771238, at *5 (W.D. Mich. Sept. 14, 2016) (same). The undersigned therefore finds that the ALJ did not err by declining to contact Dr. Weaver for additional information.

*Baker v. Comm'r of Soc. Sec.*, 2020 U.S. Dist. LEXIS 55392, at *23-24 (S.D. Ohio Mar. 30, 2020), *report and recommendation adopted by* 2020 U.S. Dist. LEXIS 80605, at *1 (S.D. Ohio May 7, 2020). The court agrees with this line of cases that a vague opinion does not require the ALJ to recontact the source. Indeed, as alluded to above, a medical professional might indeed use qualified language where he or she is not certain that any limitations (or the extent of those

11

limitations) will necessarily result from a claimant's impairments.

Finally, Plaintiff suggests it was error for the ALJ to consider Plaintiff's lack of any formal mental health treatment and absence of a mental health referral. (R. 10, PageID# 1590-1591). Plaintiff, however, cites no authority for this proposition. *Id*. The Commissioner asserts that Plaintiff's lack of treatment for her mental health symptoms is a legitimate and permissible reason to discount a medical opinion premised on those same symptoms. (R. 12, PageID# 1605). In *Ferguson v. Commissioner of Social Security*, 2017 WL 9473077, at *13–14 (N.D. Ohio Jan. 25, 2017) (Knepp, M.J.), *report and recommendation adopted*, 2017 WL 561834 (N.D. Ohio Feb. 13, 2017), the court was confronted with a similar argument where an ALJ had ascribed only partial weight to the opinion of a mental consultative examiner, because the plaintiff did not have any mental health treatment, did not take medication, and none of his treating physicians had suggested mental health treatment. Therein, the plaintiff likewise argued that the ALJ erred in relying on the plaintiff's lack of mental health treatment. The *Ferguson* decision, while acknowledging that relying on such a factor alone could be error, found there was no evidence in the record that the plaintiff's failure to seek treatment for mental health issues was a result of his mental impairments. *Id*. Plaintiff herein similarly makes no such argument. Further, as in *Ferguson*, the ALJ did not rely solely on Plaintiff's lack of mental health treatment as the sole basis for discounting Dr. Wierwille's opinions. *Id*. (finding that it "was reasonable for the ALJ to conclude that if Plaintiff's mental impairments were disabling, his treating physicians may have noted it, or would have suggested he seek mental health treatment.")

Therefore, the only issue before the court is whether the ALJ sufficiently *explained* why Dr. Wierwille's opinions regarding potential functional limitations were not adopted in their entirety. The ALJ did not ignore these opinions, but considered them and, furthermore, explained the

reasoning why the provider's opinion was assigned only partial weight. The explanation requirement applicable to non-treating sources should not be confused with or construed as rigorously as the standard applicable under treating physician rule. *See, e.g., Jefferson v. Colvin*, 2015 WL 4459928 at *6 (N.D. Ohio 2015) (White, M.J.); *Wright v. Colvin*, 2016 WL 5661595 at *10 (N.D. Ohio Sept. 30, 2016) (McHargh, M.J.) (declining to "judicially expand the treating physician rule to non-treating sources").

Because the decision sufficiently explains the weight assigned to the opinion from the non-treating source, Plaintiff has not identified any reversible error. To the extent Plaintiff "may disagree with the ALJ's explanation or her interpretation of the evidence of record, her disagreement with the ALJ's rationale does not provide a basis for remand." *Steed v. Colvin*, No. 4:15cv01269, 2016 WL 4479485, at *10 (N.D. Ohio Aug. 25, 2016) (McHargh, M.J.)

### 2. Weight Assigned to Opinions of Other Sources

In the second assignment of error, Plaintiff asserts the ALJ erred by failing to properly evaluate the functional capacity evaluation (FCE) conducted by physical therapist Eric Schaffner and occupational therapist Krista Hoersten. (R. 10, PageID# 1593-1595, Tr. 1378-1386). The Commissioner responds that physical therapists are not considered "acceptable medical sources" and, therefore, cannot constitute treating sources. (R. 14, PageID# 1116-1120).

A physical therapist is a "non-acceptable medical source," and an ALJ is "not required to give [a physical therapist's] opinion any particular weight." *Noto v. Comm'r of Soc. Sec.*, 632 F. App'x 243, 249 (6th Cir. 2015); *accord Knott v, Comm'r of Soc. Sec.*, No. 5:18-CV-1226, 2019 WL 4143885, at *11 (N.D. Ohio June 27, 2019), *report and recommendation adopted*, 2019 WL 4142596 (N.D. Ohio Aug. 30, 2019); *Getz v. Comm'r of Soc. Sec.*, No. CV 18-11625, 2019 WL 2710053, at *4 (E.D. Mich. June 10, 2019), *report and recommendation adopted*, 2019 WL

13

2647260 (E.D. Mich. June 27, 2019); *see also Perschka v. Comm'r of Soc. Sec.*, 411 Fed. App'x 781, 787 (6th Cir. 2010) (regulations do not include physical therapists in the list of acceptable medical sources). In other words, there is "no requirement" that the ALJ give good reasons for the weight assigned to a physical therapist, because that standard "applies only to 'treating sources' (i.e., a physician, psychologist or other acceptable medical source who has provided medical treatment or evaluation)." *Roberts v. Comm'r of Soc. Sec.*, No. 1:14-CV-355, 2015 WL 3936177, at *4 (W.D. Mich. June 26, 2015).

Although physical therapists are not "acceptable medical sources" under the regulations, Social Security Ruling ("SSR") 06-03p, notes that information from "other sources," such as physical therapists, is important and "may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function." SSR 06-03p, 2006 WL 2329939 at * 2-3 (Aug. 9, 2006). Another decision from within this district has clearly explained the ALJ's duties in connection with opinions from "other sources" as follows:

> In evaluating the opinions from "other sources," an ALJ should consider various factors, "including how long the source has known the individual, how consistent the opinion is with other evidence, and how well the source explains the opinion." *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 541 (6th Cir. 2007) (citation omitted); *see* SSR 06–03P. The ruling's explanation of the consideration to be afforded "other source" opinions provides:
>
>> Since there is a requirement to consider all relevant evidence in an individual's case record, the case record should reflect the consideration of opinions from medical sources who are not "acceptable medical sources" and from "non-medical sources" who have seen the claimant in their professional capacity. Although there is a distinction between what an adjudicator must consider and what the adjudicator must explain in the disability determination or decision, *the adjudicator generally should explain the weight given to opinions from these "other sources," or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinion may have an effect on the outcome of the case*. In addition, when an adjudicator determines that an

14

> opinion from such a source is entitled to greater weight than a medical opinion from a treating source, the adjudicator must explain the reasons in the notice of decision in hearing cases and in the notice of determination (that is, in the personalized disability notice) at the initial and reconsideration levels, if the determination is less than fully favorable.
>
> SSR 06–03P, 2006 WL 2329939, at *6 (emphasis added).
>
> Given this guidance, "it will rarely be enough for the commissioner to silently 'consider' the above-mentioned factors in deciding how much weight to give to an 'other source' who has seen the claimant in the source's professional capacity." *Estep v. Comm'r of Soc. Sec.*, Case No. 15cv10329, 2016 WL 1242360, at *3 (E.D. Mich. Mar. 30, 2016); *see Hill v. Comm'r of Soc. Sec.*, 560 F. App'x 547, 550 (6th Cir. 2014) ("An ALJ must consider other-source opinions and 'generally should explain the weight given to opinions for these 'other sources[.]'") (alteration in original) (quoting SSR 06–03p). Rather, "[t]he Sixth Circuit has repeatedly recognized that the commissioner must make an adequate record of the commissioner's consideration of an 'other source' who has seen the claimant in the source's professional capacity." *Estep*, 2016 WL 1242360, at *3 (collecting cases); *Hatfield v. Astrue*, No. 3:07-cv-242, 2008 WL 2437673, at *3 (E.D. Tenn. June 13, 2008) (noting that "[t]he Sixth Circuit...appears to interpret the phrase 'should explain' as indicative of strongly suggesting that the ALJ explain the weight [given to an 'other source' opinions], as opposed to leaving the decision whether to explain to the ALJ's discretion") (citing *Cruse*, 502 F.3d at 541). **Still, "[s]o long as the ALJ addresses the opinion [from an 'other source'] and gives reasons for crediting or not crediting the opinion, the ALJ has complied with the regulations."** *Drain v. Comm'r of Soc. Sec.*, No. 14cv12036, 2015 WL 4603038, at *4 (E.D. Mich. July 30, 2015) (citing *Cole v. Astrue*, 661 F.3d 931, 939 (6th Cir. 2011)).

*Hirko v. Colvin*, No. 1:15cv580, 2016 WL 4486852 at *3 (N.D. Ohio Aug. 26, 2016) (Lioi, J.) (emphasis added).

Here the ALJ did not ignore the opinion of Ms. Hoersten and Mr. Schaffner or consider them in silence. Instead, the ALJ provided the following discussion and explanation concerning the weight accorded to their opinion:

> Turning to the opinion evidence, the record supports the claimant participated in a physical functional capacity examination (FCE) on May 23, 2017. (39F). The examination was performed by Krista Hoersten, occupational therapist and Eric Schaffner, physical therapist. (39F). The examiners found that based on their testing, the claimant would have poor workday tolerance and would be able to

15

> perform work up to 4 hours per day. (*Id*.). However, their physical findings, suggest that the claimant is capable of meeting job demands. (*Id*.). Specifically, they noted the claimant can occasionally lift from 20 to 32 pounds; and has no limits with kneeling, crouching, standing, or stair climbing. (*Id*.). But they, noted that the claimant would have limitations with elevated reaching and mid-level reaching due to pain. (*Id*.). Yet, they found she could perform frequent walking, occasional squatting, and frequent fine motor coordination. (*Id*.).
>
> The FCE report submitted in the record was a summary of the testing performed and did not contain a full explanation of the claimant's effort or how the consistency of the claimant's skills was evaluated on the exam. (See 39F). Further, the finding that the claimant would only be able to perform work up to 4 hours per day, appears to be based on the claimant's poor tolerance on exam, and did not consider the most the claimant was capable of doing. (*Id*.). For these reasons, only partial weight is accorded to the functional examination of record.
>
> It is also noted, that as occupational and physical therapists, Ms. Hoersten and Mr. Schaffner are not considered to be "acceptable medical sources" for the purpose of generating a medical opinion in this matter (20 CFR 416.927(f)). Regardless, their opinions have been fully considered, as discussed above, in order to gain further insight into the severity of the claimant's limitations pursuant to 20 CFR 416.927(f).

(Tr. 23).

The decision clearly demonstrates that the ALJ did not ignore the FCE performed by Ms. Hoersten and Mr. Schaffner. To the contrary, the ALJ identified inconsistencies in the FCE report and explained that he was assigned their opinion only partial weight. Although Plaintiff plainly takes issue with the explanation provided (R. 10, PageID# 1594-1595), it is not this Court's function to re-weigh the opinions of record. Further, to the extent Plaintiff's argument seeks to extend the rigors of the treating physician rule to "other sources," the Court declines to do so. Moreover, the decision reasonably points out that the FCE did not consider the most Plaintiff was capable of, and instead recommended a four-hour work day to start (Tr. 1378), but did not explain why such a limitation was necessary when Plaintiff could walk frequently (up to two-thirds or six hours of an eight-hour workday), or their inconsistent statement that Plaintiff's

16

"physical work abilities meet job demands …." (Tr. 1381-1382). By expressly addressing the opinion from these other sources and giving reasons for not crediting it, the ALJ has complied with the regulations.

Plaintiff's contention that the ALJ was dismissive of the FCE solely because it was not authored by "acceptable medical sources" is belied by the express language of the decision. (R. 10, PageID# 1594). In addition, Plaintiff's brief fails to identify any law suggesting that it is error for an ALJ to discount the functional limitations assessed by a physical or occupational therapist on the grounds that they do not constitute acceptable medical sources.[2] (R. 10, PageID# 1593-1595). Furthermore, in *Noto*, the Court of Appeals found that the most compelling reason for the ALJ not to give significant weight to the physical therapist's opinion was its inconsistency with the opinions of the State Agency physicians. 632 F. App'x at 249; *see also Collins v. Colvin*, 2017 U.S. Dist. LEXIS 41211, at *20 (E.D. Ky. Mar. 22, 2017) (finding no error where the ALJ addressed the physical therapists' opinions and rejected them because they were "not supported by objective evidence and because physical therapists are not accepted medical sources.")

Here, as in *Noto*, the ALJ also opted to ascribe greater weight to the State Agency physicians who do constitute acceptable medical sources. The ALJ noted that their opinions—an RFC for medium exertional work—were "generally consistent with the claimant's physical exams of record reflecting normal gait, strength, and range of motion. (8F/7/12 and

---

[2] Plaintiff's attempt to compare occupational or physical therapists in this case to nurse practitioners or physicians' assistants who "have assumed a greater percentage of the treatment and/or evaluation functions previously handled primarily by physicians and psychologists," is unavailing given the facts of this case. (R. 10, PageID# 1593, *citing Cole v. Astrue*, 661 F.3d 931, fn. 4 (6th Cir. 2011)). It is uncontested that Ms. Hoersten and Mr. Schaffner did not engage in any course of treatment of Plaintiff, but instead authored the FCE based on a one-time test.

14F/5/13/20). Thus, some weight is accorded to the assessments of the State agency consultants." (Tr. 24). Although the ALJ ultimately assessed some greater restrictions than the State Agency physicians based on additional evidence, the decision, read as a whole, leaves no doubt that it clearly ascribed greater weight to the State Agency opinions that Plaintiff was capable of meeting the exertional demands of medium work over an 8-hour workday than to the FCE's opinion that Plaintiff should start with 4-hour workdays.[3] *See, e.g., Meuzelaar v. Comm'r of Soc. Sec.*, 648 Fed. App'x 582, 584 (6th Cir. 2016) (finding that a nurse opinion "is entitled to less weight than a physician's opinion" because a nurse is not an "acceptable medical source"); *Nierzwick v. Comm'r of Soc. Sec.*, 7 Fed. App'x 358, 363 (6th Cir. 2001) (concluding that a physical therapist's report was "not afforded significant weight because a physical therapist is not recognized as an acceptable medical source").

Finally, the court points out that the Sixth Circuit Court of Appeals has observed that "the Commissioner has broad discretion in weighing … an opinion" from an "other source." *Brown v. Comm'r of Soc. Sec.*, 591 Fed. App'x 449, 451 (6th Cir. 2015). Thus, the court finds no error.

---

[3] Although the ALJ describes the weight ascribed to the State Agency opinions as "overall partial weight," and the weight ascribed to the FCE also as "partial weight," this cannot reasonably be construed as ascribing equal weight to the opinions. (Tr. 23-24). Simply put, the ALJ did adopt either set of opinions in their entirety. Again, reading the decision in its entirety, the RFC plainly incorporates more of the State Agency physicians' opinions, and an ALJ is certainly permitted to ascribe greater weight to the opinions of acceptable medical sources than to "other sources."

**VI. Conclusion**

For the foregoing reasons, it is recommended that the Commissioner's final decision be AFFIRMED.

                                                s/ *David A. Ruiz*
                                                David A. Ruiz
                                                United States Magistrate Judge

Date: January 11, 2021

**OBJECTIONS**

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may waive the right to appeal the district court's order.** *See United States v. Walters*, **638 F.2d 947 (6th Cir. 1981);** *Thomas v. Arn*, **474 U.S. 140 (1985),** *reh'g denied*, **474 U.S. 1111 (1986).**